**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| CATHERINE L. GUYETTE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.                            ) | CIVIL ACTION FILE |
| ) | |
| CHARTER COMMUNICATIONS, INC. ) | |
| ) | **JURY TRIAL DEMANDED** |
| Defendant.              ) | |
| ) | |

## COMPLAINT

## NATURE OF CLAIM

Plaintiff, CATHERINE L. GUYETTE, ("Guyette" or "Plaintiff"), hereby

files this, a proceeding against her former employer, CHARTER

COMMUICATIONS, INC. ("CHARTER") for declaratory and injunctive relief

and monetary damages to redress the deprivations of rights secured to Plaintiff by

the Civil Rights Act of 1871, 42 U.S.C. §§ 1981 and 1983, ("Section 1981") and

for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.

§§2000e *et seq.*(hereinafter "Title VII").

## INTRODUCTION

This is an action brought under Section 1981 and Title VII to correct

unlawful employment practices of race to vindicate Plaintiff's rights, and to make

her whole for damages arising from her employment termination.   Guyette

contends Charter Communications, Inc. terminated her employment based on her

race, Caucasian, under the same conditions and facts in which Charter retained two

other individuals of different minority races. Guyette asserts that Defendant created

documentation post-termination to create a false record utilized to justify racial

discrimination relating to her termination.  Guyette also asserts the Defendant

systematically provided minority employees preferential treatment based on their

race to the detriment of Caucasian employees.

<u>**JURISDICTION AND VENUE**</u>

1.

Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331 and

1343(a)(4), 42 U.S.C. §2000e-5f to protect rights guaranteed by 42 U.S.C. §1981,

and Title VII of the 1964 Civil Rights Act, as amended 42 U.S.C. §2000e *et seq*.

2.

Venue is proper in this district and division pursuant to 28 U.S.C. § 1391

because Defendant Charter conducts business in this district and division and the

unlawful actions and practices alleged herein were committed within the Northern

District of Georgia.

## ADMINISTRATIVE PROCEEDINGS

3.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission within 180 days of the occurrence of the acts of which she complains. (Attached as Exhibit A).

4.

Plaintiff received a Notice of Right to Sue dated October 23, 2017 from the EEOC relating to her charge of discrimination, charge number 410-2017-00012. This civil action is instituted in the appropriate federal district court within ninety (90) days of the receipt of said Notice.   (Attached as Exhibit B).

## STATEMENT OF COMMON FACTS

5.

Plaintiff Guyette describes her race as Caucasian. Guyette was employed by the Defendant as a Direct Sales Supervisor.

6.

Guyette's Manager, Malcolm Brooks, ("Brooks") is African American.

7.

Kerri Kline, ("Kline") is Asian and held a comparable position with similar

3

duties to Guyette.

8.

Darrea'l Young, ("Young") is African American and held a comparable position with similar duties to Guyette.

9.

Robin Garland, ("Garland") is Caucasian and held a position to whom Guyette reported on an interim basis in Brooks absence during a sales initiative roll-out consisting of a Roku box and an accompanying service.

10.

The sales initiative commenced during the time Brooks informed Guyette he would be on vacation and Guyette should report to Garland until his return.

11.

On February 20, 2016, the details of the sales initiative were communicated in a conference call initiated by Garland and joined by Brooks to sales representatives, supervisors and sales managers with a roll-out date established for the following Monday, February 22, 2016.

12.

On the morning of February 22, 2016, Guyette conducted a team meeting

with the individuals making up the sales team reporting to her during which

Garland entered by phone to cover the sales initiative process and service.  Guyette

provided channel information sheets and instructions how to explain the service to

the prospective customers.

13.

On subsequent conference calls on February 22, 2016, participated in by

Guyette, Brooks was not on the calls as he was unavailable.

14.

On February 24, 2016, Garland lead a conference call on the initiative with

all sales representatives reporting to Guyette.  Sales reports and audits timing set

for rapid processing daily as field sales were being reported.

15.

On February 25, 2016, Garland conducted a conference call with all the

sales representatives on Guyette's sales team included. Announced that sales

representatives would soon be able to record new sales on their tablets.

16.

On February 26, 2016, Garland participated in conference call with

Guyette's sales team.  After being informed the sales representative with the most

sales would enter his orders while not in the presence of the customer, all sales representatives were instructed to conduct all orders in the presence of the customer and ensure the customer understood the service they were going to receive.

17.

On February 29, 2016, Guyette becomes aware of customer complaints related to sales and services the customers claimed they did not order and attempts to contact Brooks without success and notifies Garland about the issue.  Guyette responds by sending out an email to her sales representatives regarding the matter.

18.

Later that day, Garland conducts a conference call with Guyette, Kline, and Young instructing them to investigate sales which customers claimed not to have ordered as similar customer claims are being discovered in each of their respective sales districts.

19.

Brooks phones and informs Guyette that she is doing a good job on the sales project and that he would return later in the week to giver her additional assistance with the audits as requested by Guyette.

20.

Throughout the sales initiative, daily communications are made by email and phone between Guyette and Garland regarding the progress of the sales initiative.

21.

On March 2, 2016, Guyette informed Garland that additional customers had made notification of not ordering additional services and that some customers were coming into the office with complaints. Garland recommended response would be to thank those customers for bringing the issue to their attention.

22.

On March 4, 2016, Brooks communicates his continued unavailability as he would be attending supervisory training.

23.

On March 10, 2016, Brooks contacts Guyette to request further reports of customer complaints (escalations) be sent to him.  Guyette sends most recent report to both Brooks and Garland.

24.

Later that day, March 10, 2016, Guyette is informed by upper management that due to the number of fraudulent orders being submitted in the three pilot

districts, the sales initiative will be ended.

25.

On March 14, 2016, Guyette was contacted by Region Sales Director, Amanda Fields, that three of her sales representatives were being or are going to be placed on leave of absence and that if Guyette had any questions she should contact Garland.

26.

On information and belief, Brooks thereafter meets with the three suspended sales representatives, all African Americans, to interview them regarding the orders they entered for customers who the Defendant identified as fraudulent.

27.

Brooks arranges a meeting on March 22, 2016 with Guyette at which time he informs her that Human Resources is conferencing in on a phone call.  The purpose of the meeting was to place Guyette on leave of absence related to the sales initiative project. Human Resources requests non-disclosure of the meeting and no contact other than with Human Resources participating on the conference call.

28.

On March 23, 2016, Guyette notifies Human Resources she had received a communication from a former co-worker, African-American, who stated he knew she was placed on leave of absence and was going to be terminated.

29.

Based on the timing of the communication, the information discussed is believed to have come from Anthony Hicks, one of the sales representatives placed on leave of absence and who had discussed the matter with Brooks prior to Hicks being placed on leave of absence.

30.

On March 25, 2016 Guyette was interviewed in the presence of Human Resources while being questioned by Brooks.  Guyette was not permitted by Brooks to present clarification to the questions being asked by Brooks which accused Guyette of not informing leadership of customer complaints.  Human Resources did not seek to interject to allow Guyette to explain her daily interactions with Garland in the extended absence of Brooks during the sales initiative or to provide additional information.

## CAUSE OF ACTION

### Intentional Race Discrimination

#### 31.

Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 30 of this Complaint with the same force and effect as if set forth herein.

#### 32.

Brooks took a role leading to and in the ultimate decision to terminate Guyette's employment.

#### 33.

Brooks systematically encouraged and engaged the employment of African-Americans in sales representative positions reporting to Guyette.

#### 34.

Kline's sales group recorded more than 200 sales identified by Defendant as fraudulent resulting in the termination of all sales representatives reporting to Kline being terminated.

#### 35.

Kline was not terminated or subject to an individual investigation.

36.

Young's sales group recorded more than 50 customer sales identified by Defendant as fraudulent resulting in his sales representatives being placed on leave of absence. Young was not terminated.

37.

All the sales representatives, African American, reporting to Guyette retained their employment, including Hicks and two others who on information and belief gave false statements Brooks knew to be false.

38.

Defendant possessed knowledge and information which Defendant knew or should have known the statements provided to Brooks by the sales representatives placed on leave of absence to be false.

39.

On information and belief, Brooks encouraged Hicks to make a false statement to support the termination of Guyette so that Hicks, could in return, retain his employment.

40.

Hicks had placed a high number of the sales orders which resulted in

11

customer complaints of not having ordered additional services identified by Charter as fraudulent orders.

41.

Guyette was notified of her termination on April 7, 2016 but only after all managers were previously notified of the action including individuals who did not have a need to know thereby causing her reputational and compensatory damages.

42.

The reason stated for terminating Guyette, condoning fraudulent activity, is false and/or unworthy of belief because Guyette followed policy and orders to report matters related to the sales initiative to Garland all of which was substantially documented, known to Defendant Charter, and inclusive of customer complaints.

43.

Charter Communications also was aware of the unusual number of customer claims related to the sales initiative being made from all three pilot sales territories and engaged by terminating the project due to the system flaw resulting in the ability of sales representatives to enter additional orders based on existing customer information on the data base.

44.

On June 16, 2016, Brooks, admitted during a Georgia Department of Labor Hearing, that a document he prepared and presented as a business record purportedly evidencing prior discipline taken against Guyette was prepared after Guyette's termination and contained information which was shown to be false.

45.

Brooks, on information and belief, had planned to replace Guyette with an African-American prior to the sales initiative project taking place and Guyette was informed by others he had made statements of that intent.

46.

Following Guyette's termination, Guyette was replaced by Samuel Bailey, African American, reporting to Brooks.

47.

Defendant Charter has engaged in and ratified intentional discrimination against Guyette on account of her race in violation of Title VII and Section 1981 in the terms, conditions, and privileges of her employment by treating similarly situated individuals differently and by terminating her employment.

48.

Guyette is now suffering and will continue to suffer irreparable injury and monetary damages because of Defendant's purposeful discriminatory practices unless this Court grants relief.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

(a)  Declaring that the acts and practices complained of herein are in violation of Title VII and Section 1981 and directing Defendant Charter to take such affirmative steps as are necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect Plaintiff's future employment opportunities;

(b)  Award Guyette monetary damages making her whole for all earnings she would have received but for Defendant's discriminatory acts, including, but not limited to wages, pension, bonuses, and other lost benefits;

(c)  Award Guyette compensatory and punitive damages for violations of Title VII and Section 1981;

(d) Awarding Plaintiff, the costs of this action, together with reasonable attorneys' fees; and

14

(e)  granting such other and further relief as his Court deems necessary and

proper.

Dated this the 27<u>th</u>   day of November, 2017.

s/<u>Howard R. Evans</u>
Howard R. Evans
Ga. Bar No. 292865

Howard R. Evans & Associates
4488 North Shallowford Road, Suite 216
Atlanta, Georgia 30338
(770) 377-9521
Email:  attorney4hrlaw@gmail.com